UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ZIOLKOWSKI,<br><br>  Plaintiff,<br><br> v.<br><br>NETFLIX, INC., et al.,<br><br>  Defendants. | Case No. 17-cv-01070-HSG<br><br>**ORDER DENYING BAGLEY'S MOTION AND GRANTING DUDASH'S MOTION RE: APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**<br><br>Re: Dkt. Nos. 20, 24 |

On March 1, 2017, Plaintiff James Ziolkowski filed this securities class action lawsuit individually and on behalf of others who acquired common stock of Netflix, Inc. ("Netflix") during the period between July 22, 2014 and October 15, 2014 ("Class Period") and consequently suffered damages. Dkt. No. 1 ("Compl."). Also on March 1, 2017, notice of this suit was published in *GlobeNewswire*. Abadou Decl., Ex. C.[1] The complaint asserts claims under §§ 10(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Compl. ¶¶ 60–75. The complaint names the following defendants: Netflix, Inc. ("Netflix"); Netflix's Chief Executive Officer, Reed Hastings; and Netflix's Chief Financial Officer, David Wells. Compl. ¶¶ 11–13.

On May 1, 2017, two competing motions for appointment as lead plaintiff and approval of lead counsel were filed: (1) a motion filed by Linda Bagley, seeking appointment of herself as lead plaintiff and approval of Levi & Korsinky, LLP as lead counsel, Dkt. No. 20; and (2) a motion filed by Michael DuDash, seeking appointment of himself as lead plaintiff and approval of Kahn Swick & Foti, LLC ("KSF") and Finkelstein & Krinsk, LLP ("F&K") as lead counsel, Dkt. No. 24 ("DuDash's Mot."). On May 15, 2017, Bagley filed a notice of non-opposition with

---

[1] The declaration of Ramzi Abadou was filed as Dkt. No. 25.

respect to these competing motions because she appeared not to have the "'largest financial interest in the relief sought by the class' as required by the by the PSLRA." Dkt. No. 27 at 2 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). Also on May 15, 2017, DuDash filed an opposition representing that he was the presumptive lead plaintiff, Dkt. No. 28, as well as a notice of unopposed motion, Dkt. No. 29. Accordingly, DuDash's motion is now unopposed. Having carefully considered the relevant filings and authorities, the Court hereby **DENIES** Bagley's motion and **GRANTS** DuDash's motion.[2]

## I. BACKGROUND

Defendant Netflix's business is primarily focused on streaming content whereby customers pay a monthly fee to view shows and movies online. Compl. ¶ 1. Defendants allegedly made materially false or misleading statements concerning the impact of Netflix's increased subscription fee on the company's subscriber growth and financials, and when that impact was revealed, the stock price plummeted and the putative class members, who acquired Netflix's common stock at inflated prices during the Class Period, suffered financial losses. *See id.* ¶¶ 1–6, 14–59.

Specifically, on May 9, 2014, Defendants raised the price of Netflix's most popular streaming subscription from $7.99 to $8.99 per month. *Id.* ¶ 21. In a letter to shareholders on July 21, 2014, Defendants announced strong subscriber growth during the second quarter, predicted that 1.3 million U.S. subscribers would be added in the third quarter, and stated that the price increase had a "minimal impact on membership growth." *Id.* ¶ 22–23. Later that day, during the quarterly earnings interview, Defendant Hastings characterized the "impact of the price change" as "pretty nominal" and "background noise," and stated that "when we make a small change in price, and handle it appropriately, it really makes no noticeable effect in the business." *Id.* ¶ 24. Subsequently, after market hours on October 15, 2014, Defendants announced the third-quarter financial results, reporting that Netflix added 980,000 U.S. subscribers (35% fewer than predicted), and that "the primary cause is the slightly higher prices we now have compared to a year ago." *Id.* ¶ 27–28. Defendants sought to harmonize their July 21 and October 15 statements

---

[2] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

2

by explaining that "we believe that [in] late Q2 and early Q3[,] the impact of higher prices appeared to be offset for about two months by the large positive reception to Season Two of *Orange is the New Black*" ("*OITNB*"). *Id.* ¶ 29. Defendants reduced the fourth-quarter earnings forecast by almost 50%. *Id.* ¶ 32. By closing of the next trading day, October 16, 2014, Netflix's stock price fell from $448.59 to $361.70 per share, cutting the company's market value by more than $5 billion. *Id.*

With regard to Defendants' scienter in making allegedly false or misleading statements, the complaint states that Defendants (a) knew from pre-Class Period experience that releasing a new season of a popular TV show significantly skews subscriber growth to the upside upon release; (b) saw the actual negative effect of their price increase for several weeks before they saw the "offsetting" positive effect of *OITNB*; (c) knew that a disproportionate share of Netflix's overall subscription growth during the second quarter of 2014 was driven by *OITNB* enthusiasts who would not be there in the third quarter to offset the effect of the price increase; and (d) knew from pre-Class Period experience that even small monthly price increases could have devastating effects on the company, such that Defendants were acutely focused on the effects of the May 9 price increase before making the July 21 statements. *Id.* ¶ 33; *see also id.* ¶¶ 34-51 (elaborating on these allegations). Accordingly, Defendants allegedly knew or recklessly disregarded that their July 21, 2014 statements were false and misleading when made. *Id.* ¶ 51.

## II. APPOINTMENT OF LEAD PLAINTIFF

The Private Securities Litigation Reform Act ("PSLRA") "instructs district courts to select as lead plaintiff the one 'most capable of adequately representing the interests of class members.'" *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). "The 'most capable' plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *See id.* at 729. The Ninth Circuit has interpreted the PSLRA as establishing "a simple three-step process for identifying the lead plaintiff pursuant to these criteria." *Id.* at 729.

### A. Step One

Step One consists of meeting the PSLRA's notice requirement. *See id.* at 729. "The first

plaintiff to file an action covered by the [PSLRA] must post this notice 'in a widely circulated national business-oriented publication or wire service.'" *Id.* at 729 (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)). The notice must be published within 20 days of the filing of the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must also alert putative class members "(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *Id.*

Here, notice was published in *GlobeNewswire* on the same day that the complaint was filed. *Compare* Compl. *with* Abadou Decl., Ex. C (both filed March 1, 2017). This clearly complied with the PSLRA's 20-day filing deadline. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). *GlobeNewswire* is "one of the world's largest newswire distribution networks, specializing in the delivery of corporate press releases[,] financial disclosures[,] and multimedia content to the media, investment community, individual investors[,] and the general public." Abadou Decl., Ex. C. Thus, as required, the notice was posted "in a widely circulated national business-oriented publication or wire service." *See Cavanaugh*, 306 F.3d at 729 (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)). Finally, the notice announced the filing of this class action, described the asserted claims, specified the putative class period, and explained that any motion to be appointed lead plaintiff had to be filed by May 1, 2017. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). For these reasons, the Court rules that Step One's requirements are met.

### B.  Step Two

Step Two consists of identifying the presumptive lead plaintiff. *See Cavanaugh*, 306 F.3d at 729–30. There is a rebuttable presumption that the "most adequate plaintiff" is the one who "(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Thus, once the filing requirement of subsection (a)(3)(B)(iii)(I)(aa) is met, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d

at 730. Next, the district court "must . . . focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* (emphasis in original). If so, he is the presumptive lead plaintiff. *Id.*

Here, DuDash timely filed his motion to be appointed lead plaintiff on May 1, 2017, satisfying subsection (a)(3)(B)(iii)(I)(aa). Moreover, he suffered alleged losses totaling $18,865.50 as a result of his purchase of 150 shares of Netflix stock during the Class Period. *See* Abadou Decl., Ex. B. This sum is greater than the $8,428.34 loss alleged by Bagley, *see* Dkt. No. 21-2, who now recognizes that she lacks the largest financial interest in the relief sought by the class, *see* Dkt. No. 27. Since DuDash's motion is unopposed, and no other class member besides Bagley filed a motion, no one claims to have suffered greater losses than him. Therefore, DuDash "has the most to gain from the lawsuit." *See Cavanaugh*, 306 F.3d at 730.

Next, the Court turns to the "typicality" and "adequacy" requirements of Rule 23(a). The Court finds that "typicality" is satisfied because the claims and defenses of DuDash "are typical of the claims and defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). Like other putative class members, DuDash alleges that during the Class Period, he acquired Netflix's common stock at prices that were inflated by Defendants' material misrepresentations, and that he consequently suffered damages. *See* Compl. ¶¶ 1–6, 14–59; Abadou Decl., Ex. A (DuDash's certification declaring under penalty of perjury that he adopts the allegations of the complaint and that he purchased 150 shares of Netflix securities during the Class Period); *id.*, Ex. B (DuDash's loss chart alleging that his purchase of these 150 shares resulted in damages totaling $18,865.50). In addition, DuDash's motion represents that "[t]here is no evidence of antagonism between his interests and those of the proposed class," *see* DuDash's Mot. at 8, and given that the motion is now unopposed, the court has no reason to doubt this representation, *cf. Bodri v. GoPro, Inc.*, 2016 U.S. Dist. LEXIS 57559, at *16–17 (N.D. Cal. Apr. 28, 2016) (finding that the typicality requirement was satisfied where movant represented that it was "not aware of any conflicts between its claims and those asserted by the class" and "no other movant ha[d] presented the Court with any reason to doubt these assertions"). The Court also finds that "adequacy" is

1  satisfied because DuDash "will fairly and adequately protect the interests of the class." *See* Fed.

2  R. Civ. P. 23(a)(4). Like the lead plaintiff appointed in *Bodri*, DuDash's "substantial financial

3  stake in the outcome of this litigation, [his] timely filing of [his] motion, and the quality of [his]

4  briefing all demonstrate that [he] is both motivated to, and capable of, vigorously pursuing this

5  litigation." *See* 2016 U.S. Dist. LEXIS 57559, at *17.

6  Consequently, the Court holds that Step Two's requirements are met.

### C. Step Three

Step Three consists of "giv[ing] other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F.3d at 730. DuDash's motion is now unopposed. Since his presumptive lead plaintiff status is not rebutted, Step Three's requirements are met. DuDash's appointment as lead plaintiff is appropriate.

## III. APPOINTMENT OF LEAD COUNSEL

DuDash has moved for approval of his selection of KSF and F&K as class counsel. Mot. at 8–9; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.") The Court defers to DuDash's choice of lead counsel because his choice is not "so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on [his] willingness or ability to perform the functions of lead plaintiff." *See Cavanaugh*, 306 F.3d at 733; *see also id.* at 739 n.11 ("Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class.") KSF and F&K both have extensive experience as lead counsel in securities class actions. *See* Abadou Decl., Exs. D–E (firm resumes). Approval of DuDash's selection of lead counsel is therefore merited. Nonetheless, KSF and F&K should divide up litigation responsibilities in a way that promotes the efficient representation of the putative class. *See Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, 2015 U.S. Dist. LEXIS 138654, at *7–8 (N.D. Cal. Oct. 8, 2015).

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Bagley's motion and **GRANTS** DuDash's motion. DuDash is appointed as lead plaintiff for the putative class. KSF and F&K are approved

as lead counsel for the putative class.  Having reviewed the parties' proposed schedule for filing an amended complaint and a motion to dismiss, the Court hereby **SETS** the following schedule: amended complaint by August 14, 2017; motion to dismiss by October 13, 2017; opposition by November 27, 2017; reply by December 27, 2017; hearing on January 11, 2018, at 2:00 p.m.; further case management conference on April 17, 2018, at 2:00 p.m.

**IT IS SO ORDERED.**

Dated:  6/14/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge